**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**MICHELLE DRYDEN o/b/o A.L.R. III**
**Plaintiff,**

**v.** **Case No. 25-C-1675**

**FRANK BISIGNANO,**
**Commissioner of the Social Security Administration**
**Defendant.**

---

## DECISION AND ORDER

Plaintiff seeks judicial review of the denial of the application for childhood disability benefits she filed on behalf of her minor child, A.L.R. Plaintiff alleged disability based on a learning disorder and attention deficit hyperactivity disorder (ADHD), but the Administrative Law Judge (ALJ) assigned the case found these impairments insufficiently severe to support the claim. Plaintiff disagrees with the ALJ's decision, but she fails to show that it lacks the support of substantial evidence in the record or rests on an error of law. I therefore affirm the ALJ's decision.

## I. CHILD DISABILITY STANDARD

A child qualifies as disabled if he has a medically determinable physical or mental impairment, which results in marked and severe functional limitations and which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). In deciding such claims, the ALJ applies a three-step test, asking: (1) whether the child is engaged in substantial gainful activity; (2) if not, whether the child has a severe medical impairment or combination of impairments; and (3) if so, whether the child's

impairments meet or medically equal, or functionally equal, the severity of any of the Listings of Impairments contained in the regulations. See L.D.R. v. Berryhill, 920 F.3d 1146, 1150 (7th Cir. 2019); Hopgood v. Astrue, 578 F.3d 696, 699 (7th Cir. 2009).

In order to meet a Listing, the claimant must satisfy all of the various criteria specified in that Listing. Ribaudo v. Barnhart, 458 F.3d 580, 583 (7th Cir. 2006) (citing Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999)). To determine whether an impairment is functionally equivalent, the ALJ evaluates the child-claimant's degree of limitation (i.e., extreme, marked, less than marked, or no limitation) in six "domains": (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To functionally equal the Listings, the child must have an "extreme" limitation in one domain or a "marked" limitation in two domains. 20 C.F.R. § 416.926a(a). A "marked" limitation exists when the impairment seriously interferes with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation exists when a child's impairment interferes very seriously with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

## II. FACTS AND BACKGROUND

### A. Plaintiff's Application and Agency Decisions

Plaintiff applied for benefits on behalf of A.L.R. on June 17, 2022. (Tr. at 110, 188, 213.) In function reports, she noted that he had issues with learning (Tr. at 207) and paying attention (Tr. at 211). She further reported that A.L.R. had a hard time interpreting things being said (Tr. at 232), had an IEP (Individualized Education Program) and received specially designed

instruction for all subjects in school (Tr. at 233), had issues with chores and personal hygiene (Tr. at 235), and could not finished what he started (Tr. at 236).

The agency collected A.L.R.'s school records, which included an IEP implemented in 2022, when he was in the fifth grade, based on a learning disability and noted issues with reading and inattentiveness. (Tr. at 268-69, 272, 276, 278, 284.) The IEP noted no chronic or acute health problems. (Tr. at 281-82.) The IEP concluded that A.L.R. needed specialized instruction in basic reading skills. (Tr. at 285.)

A.L.R.'s 2023 IEP noted that more recent testing revealed progress, up two grade levels in reading and 0.5 grade level in math. (Tr. at 312-13.) He was able to display self-control and stay on-task in all classes about 90% of the time. (Tr. at 313.) However, he continued to have delays (Tr. at 316) and required specialized instruction (Tr. at 326) in English and math (Tr. at 328, 331). His 2023-24 (seventh grade) report card noted academic performance levels of basic in some areas, proficient in others, minimal in a few. (Tr. at 332-33.) His Spring 2023 Wisconsin Forward Exam showed below basic level in English (19th percentile) and math (21st percentile). (Tr. at 340.)

The agency denied the application initially on June 7, 2023, based on the review of Deborah Pape, Ph.D. (Tr . at 94, 127), who found less than marked limitation in domain one (acquiring and using information) and no limitations in the other domains (Tr. at 97). In reaching those conclusions, Dr. Pape cited the 2022-23 IEP records, which documented reading at the fifth grade level, math at the third grade level, and on task 90% of the time. The available records noted no diagnosis of ADHD. (Tr. at 96-97.)

Plaintiff requested reconsideration, and the agency obtained additional records, including a teacher questionnaire dated February 21, 2024 (Tr. at 362), when A.L.R. was in the

seventh grade, which indicated a reading level of 3.6 and math level of 4.2 (Tr. at 355). The teacher noted an "obvious problem" in various areas of acquiring and using information (Tr. at 356); no or slight problems in most areas of attending and completing tasks (Tr. at 357); and no problems in interacting and relating with others (Tr, at 358), moving about and manipulating objects (Tr. at 359), caring for himself (Tr. at 360), and health and physical well-being (Tr. at 361).

The agency also sent A.L.R. for an evaluation with Mark Pushkash, Ph.D., on March 14, 2024. (Tr. at 366.) A.L.R. had not previously been evaluated or treated by a mental health professional. Medically, he was overweight but otherwise healthy. (Tr. at 366.) The school had diagnosed him with a learning disability. (Tr. at 366.) His parents noted some issues getting him to complete chores. He did follow through on basic daily activities independently, and no hygiene problems were noted during the evaluation. He had friends and got along well with peers. (Tr. at 367.)

On mental status exam, A.L.R. was casually dressed, of age-appropriate appearance, and displayed no unusual behaviors, abnormal vocalizations, or involuntary movements. He sat in his chair throughout the procedures and the overall level of motor activity was within normal limits. Eye contact was adequate, and there was normal social responsiveness. He did have some difficulties paying attention, frequently asked Dr. Pushkash to repeat questions, and had difficulty staying focused on the tasks presented to him. His speech was completely intelligible, with no obvious expressive or receptive language problems. He was able to relevantly and coherently respond without indications of irrational thinking or impaired reality testing. Behaviorally, he came across as pleasant, friendly, and cooperative. Emotionally, his affect was bright and his mood euthymic. He did not describe persistent sadness or excessive

worry, and there were no behavioral signs of tension or anxiety. (Tr. at 367.)

Regarding sensorium and mental capacity, A.L.R. was fully oriented, gave the correct month and year as well as a general location, correctly gave his birthday, and identified the last three presidents. (Tr. at 367.) On a digit span task, he was able to recall four digits forward and three in reverse. Additionally, he was able to remember three unrelated items after a 10-minute delay on a technique of short-term memory. He was also able to complete basic calculations. In all, results of the cognitive measures were unremarkable. (Tr. at 368.) On testing, A.L.R. scored in the third grade level in written language/spelling and reading comprehension, fourth grade level in reading recognition, and fifth grade level in numerical reasoning. (Tr. at 368.)

Dr. Pushkash summarized:

> [A.L.R.] is a 12-year-old 7th grader, who displays problems with distractibility, poor organizational skills, and difficulty following through efficiently on tasks. Symptoms are consistent with the diagnosis of attention deficit hyperactivity disorder, primarily inattentive type. The mental status examination does not find evidence for any major affective disturbance, a specific anxiety disorder, serious behavioral problems or psychosis. Cognitively, there does not appear to be evidence for intellectual impairment. Academic testing indicates abilities below current grade placement, due to learning and attention problems.

(Tr. at 368.)

Dr. Pushkash diagnosed attention deficit hyperactivity disorder, primarily inattentive type, and unspecified learning disorder (Tr. at 368), concluding:

> This boy has the intellectual capabilities to comprehend and recall information. His ability to concentrate and persist on tasks in a classroom environment is moderately-to-markedly compromised by ADD. He generally gets along well with others and would not have difficulty appropriately relating to authority figures and peers in a classroom environment. He does struggle with learning, resulting in frustration and academic delays. Finally, should the claimant be entitled to funding, it would appear that his mother could act as a suitable payee for him.

(Tr. at 369.)

On May 28, 2024, the agency denied reconsideration based on the review of Susan Donahoo, Psy.D. (Tr. at 100, 132), who found marked limitation in acquiring and using information, less than marked limitation in attending and completing tasks, less than marked limitation in interacting and relating with others, and no limitations in the remaining domains (Tr. at 104). In finding greater limitations than did Dr. Pape, Dr. Donahoo relied on the updated IEP and the report from Dr. Pushkash. However, she agreed that the evidence did not support functional equivalence. (Tr. at 102-03.) Plaintiff then requested a hearing before an ALJ. (Tr. at 135.)

**B. Hearing**

On December 20, 2024, plaintiff appeared in person with A.L.R. for a hearing before the ALJ. (Tr. at 63.) Plaintiff testified that A.L.R. was then 13 years old and in the eighth grade. (Tr. at 73-74.) He had an IEP based on issues with attention and received instruction in one of the special education classrooms for all subjects. (Tr. at 75-76.) His reading score, measured in the seventh grade, was at the third to fifth grade level and his math score was third to fourth grade level. (Tr. at 76.) The IEP started in the fifth grade. (Tr. at 78.) He did not receive medical treatment for attention problems, e.g., medication or counseling. (Tr. at 78.) His school behavior was good. (Tr. at 80.) He sometimes completed chores, other times got distracted; he also needed reminders for basic personal care. (Tr. at 81.) Aside from concerns about his weight, his health was good. (Tr. at 83.)

After the hearing, the ALJ obtained additional education records (Tr. at 258-64) and the most recent IEP (Tr. at 376-429). Plaintiff was afforded a chance to submit written comment or request a supplemental hearing (Tr. at 265), but she did not do so (Tr. at 110).

The educational records included a Spring 2024 Wisconsin Forward Student Exam

Report (Grade 7), which indicated that A.L.R. tested in the 4th percentile in English Language Arts and 12th percentile in mathematics (Tr. at 259); a teacher report from September 6, 2024, to October 8, 2024, which noted 96% positive behavior (Tr. at 262); and a Star Report dated September 17, 2024, which noted A.L.R. was well below target in math (Tr. at 263) and significantly below target in English/language arts (Tr. at 264). The 2024-25 (eighth grade) IEP noted that A.L.R.'s strengths included his positive attitude: always "wears a smile" and ready to learn, participates in class activities, volunteers frequently to read aloud, very helpful and always goes out of his way to help adults and peers. (Tr. at 379.) January 2024 testing placed him well below grade level in reading and math. (Tr. at 379.) Regarding social/emotional skills, he was able to follow school expectations to the same degree as same-aged peers. He was on-task in all academic classes about 90% of the time. With very minimal verbal cues, he was able to focus and complete assignments independently. (Tr. at 381.) His behavior did not impede learning. (Tr. at 382.) Due to his reading and math level, however, he still required specialized instructions in a small group/individualized setting and in an environment with limited distractions. (Tr. at 400, 404.)

**C. ALJ's Decision**

On February 7, 2025, the ALJ issued an unfavorable decision. (Tr. at 107.) Following the three-step test for child disability claims (Tr. at 111), the ALJ determined that A.L.R. had not engaged in substantial gainful activity since June 17, 2022 (Tr. at 111), and that he had the severe impairments of learning disorder and ADHD (Tr. at 111). The record supported no physical impairments. (Tr. at 111.)

At the third step, the ALJ concluded that plaintiff's impairments did not meet or medically equal a Listing. (Tr. at 112.) The ALJ specifically considered Listing 112.11, which applies to

neuro-developmental disorders and requires an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (Tr. at 112.)

The ALJ found a moderate limitation in understanding, remembering, or applying information, based on evidence that A.L.R. had some learning difficulties and participated in an IEP at school. During the consultative examination, he was noted to perform at the third to fifth grade levels in spelling, despite then being in the seventh grade. However, the examiner noted that there did not appear to be evidence for intellectual impairment. (Tr. at 112.)

The ALJ found no limitation in interacting with others. A.L.R.'s teacher noted no problems in this area, and plaintiff testified that, while A.L.R. was picked on by other children at school, he had friends that he got along with, was on a basketball team at school, was polite and cooperative, and had no disciplinary problems at school. The consultative examiner noted A.L.R. to be pleasant, friendly and cooperative, to have a bright affect and euthymic mood, to have adequate eye contact, and to have no obvious expressive or receptive language problems. (Tr. at 112.)

The ALJ found moderate limitation in A.L.R.'s ability to concentrate, persist, or maintain pace, based on teacher reports that he had obvious problems with focusing, carrying out multi-step instructions, and working at a reasonable pace/finishing on time. During his consultative examination, he was noted to have difficulties paying attention, frequently asked for the examiner to repeat questions, and had difficulty staying focused on the tasks presented to him. (Tr. at 112.)

The ALJ found no limitations in adapting or managing oneself. Plaintiff testified that

A.L.R. needed reminders for hygiene, but he was observed to be casually dressed with no noted hygiene problems during his consultative examination. Plaintiff reported that he assisted with chores, albeit with reminders needed at times. He was also noted to be overweight, but otherwise healthy. Finally, A.L.R. received no medication for his ADHD and did not see a psychiatrist for any reason. (Tr. at 113.)

The ALJ then moved to the domains/functional equivalence, finding that A.L.R. had marked limitation in acquiring and using information, less than marked limitation in attending and completing tasks, and no limitations in the remaining domains (interacting/relating with others, moving about and manipulating objects, caring for himself, and health/physical well-being). (Tr. at 113-14.) In making these determinations, the ALJ considered A.L.R.'s reported symptoms, following the two-step process for symptom evaluation set out in the regulations. (Tr. at 114.)

In a function report, plaintiff alleged significant limitations in A.L.R.'s ability to communicate and comprehend. She further reported attention problems, noting that he could not complete tasks or chores. (Tr. at 114.) At the hearing, she testified that he had difficulty completing assignments and received most of his instruction at school separately, alone or in a small group. She further testified that he started falling behind in the third grade and was placed on an IEP in the fifth grade. While other children picked on him, he handled it well and had friends with whom he got along. (Tr. at 115.)

The ALJ concluded that while A.L.R.'s medically determinable impairments could reasonably be expected to cause some of the symptoms of the types alleged, the allegations concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 115.) In reaching

this conclusion, the ALJ reviewed A.L.R.'s school records and examination results. In a February 2024 report, one of A.L.R.'s teachers noted problems in the areas of acquiring/using information and attending/completing tasks, but no problems in interacting/relating with others, moving about and manipulating objects, caring for himself, and health/physical well-being. (Tr. at 115-16.) Similarly, the consultative examiner noted some difficulties paying attention, but his speech was normal, he was pleasant and friendly, and he put forth a good effort. (Tr. at 116.) Cognitive measures were unremarkable, and he scored at the third grade level in spelling and sentence comprehension, the fourth grade level in reading, and the fifth grade level in mathematic computation, when he was at the time 12 years old and in the seventh grade. (Tr. at 116-17.) The examiner noted that A.L.R. had delays relative to current grade placement in reading and writing due to attention problems and learning difficulties, diagnosing ADHD, primarily inattentive type, and unspecified learning disorder. (Tr. at 117.) Other school records noted A.L.R. to be well below target in English and math, but with positive behavior, on task about 90% of the time. His seventh grade report card noted him to have proficient or basic performance in most of his classes. (Tr. at 117.)

The ALJ then considered the medical opinions of record. The consultative examiner, Dr. Pushkash, opined that A.L.R. had the intellectual capabilities to comprehend and recall information, and that his ability to concentrate and persist on tasks in a classroom environment was moderately-to-markedly compromised by attention deficit disorder. He noted that A.L.R. generally got along well with others and would not have difficulty appropriately relating to authority figures and peers in a classroom environment, although he did struggle with learning, resulting in frustration and academic delays. The ALJ found this opinion somewhat persuasive, concluding that a moderate limitation in concentration, persistence, and maintaining pace better

supported and more consistent with the totality of the record. (Tr. at 117.)

The ALJ found Dr. Pushkash's opinion reasonably supported by his examination. Dr. Pushkash noted A.L.R. to be casually dressed and to display no unusual behaviors, abnormal vocalizations, or involuntary movements during the assessment. A.L.R. sat in a chair throughout the procedure, his motor activity was within normal limits, his eye contact was adequate, and he had normal social responsiveness. He had some difficulties paying attention, frequently asking Dr. Pushkash to repeat questions, and had difficulty staying focused on tasks presented to him. But his speech was intelligible, he had no obvious expressive or receptive language problems, he was able to relevantly and coherently respond, and he came across as pleasant, friendly and cooperative. He was oriented, exhibited a good fund of general information, was able to recall four digits forward and three in reverse, was able to remember three unrelated items after a 10-minute delay, and was able to do a simple math computation and serial threes tasks without error. (Tr. at 117.) Test scores placed A.L.R., in the seventh grade at the time, in the third grade in spelling and sentence comprehension, fourth grade in reading, and fifth grade in mathematic computation. (Tr. at 118.) However, inconsistent with a marked limitation in concentration, persistence, or maintaining pace, A.L.R. did not receive any medical treatment for his ADHD, and he had been noted in his most recent IEP to be on-task in all his academic classes about 90% of the time. (Tr. at 118.)

The ALJ found only partially persuasive the June 2023 report from Dr. Pape, assessing a less than marked limitation in acquiring and using information and no limitations in the other domains. Dr. Pape supported her findings with reference to 2022 testing results, A.L.R.'s 2023 IEP, and the absence of a diagnosis with ADHD. However, Dr. Pape's findings were made prior to the March 2024 consultative examination, which revealed below grade level performances

and a diagnosis of ADHD and learning disorder. Given his test results and diagnoses, the ALJ found that a marked limitation in acquiring/using information and a less than marked limitation in attending/completing tasks better supported. The ALJ found the remainder of Dr. Pape's findings generally consistent with other evidence of record, including testimony at the hearing regarding plaintiff's good behavior, his lack of mental or physical health treatment, his normal motor activity at the consultative examination, and his lack of limiting physical issues aside from being overweight. (Tr. at 118.)

The ALJ found generally persuasive the May 2024 assessment from Dr. Donahoo, assessing a marked limitation in acquiring and using information, less than marked limitation in attending/completing tasks and interacting/relating with others, and no limitations in the other domains. (Tr. at 118.) The ALJ disagreed only in the area of interacting and relating, citing the evidence that A.L.R. got along well with others and had no disciplinary issues at school. However, Dr. Donahoo cited pertinent and appropriate evidence in support of her other findings, including A.L.R.'s test scores, the IEP, and the consultative examination findings, which supported substantial learning and attentional deficits. (Tr. at 118-19.)

The ALJ concluded that A.L.R. had a marked limitation in acquiring and using information, based on his below-grade level test scores. However, the ALJ declined to find an extreme limitation, citing Dr. Pushkash's finding of no intellectual impairment, instead diagnosing A.L.R. with unspecified learning disorder; A.L.R.'s most recent report card, which noted proficient academic performance in some subjects; A.L.R.'s most recent IEP, which showed him to be making some progress; and plaintiff's testimony that he was getting better in some subjects, sustaining in some others. (Tr. at 119.)

The ALJ found less than marked limitation in attending and completing tasks. Dr.

Pushkash noted A.L.R. to have some difficulties paying attention and staying focused, but A.L.R. took no medications for ADHD, he did not see a counselor, and his most recent IEP noted that he was on-task in all academic classes about 90% of the time. (Tr. at 120.)

The ALJ found no limitation in interacting and relating with others, citing the teacher report that A.L.R. no problems in this area; Dr. Pushkash's observation of cooperative behavior; plaintiff's testimony that he had friends and got along well with them; and the recent IEP noting that he always "[wore] a smile," participated in class activities, answered and asked questions, and frequently volunteered to read out loud. (Tr. at 120.) The ALJ similarly found no limitation in moving about and manipulating objects, citing the teacher's report noting no problems in this area, Dr. Pushkash's observations of normal motor activity, and plaintiff's testimony that A.L.R. played sports and video games; in the ability to care for himself, again citing the teacher's report, Dr. Pushkash's observations, and plaintiff's testimony; and in health/physical well-being, citing the teacher's report of good attendance, Dr. Pushkash's observation that A.L.R. was overweight but otherwise healthy, and his parents' reports that he had no serious illnesses, injuries, surgeries, or head trauma. (Tr. at 121.)

Based on these findings, the ALJ concluded that A.L.R.'s impairments did not functionally equal a Listing. He accordingly denied the application. (Tr. at 122.)

**D. This Action**

On October 1, 2025, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. at 1, 187), making the ALJ's decision the final word from the Commissioner on the application. See Poole v. Kijakazi, 28 F.4th 792, 794 (7th Cir. 2022) ("Because the Appeals Council declined to review Poole's claim, we review the ALJ's decision as the Administration's final word."). On October 29, 2025, plaintiff filed this action pro se. (R. 1.) The

Commissioner filed the certified administrative record on January 29, 2026. (R. 14.) On January 30, 2026, counsel entered an appearance. (R. 15.) However, on March 19, 2026, counsel moved to withdraw. (R. 19.) After I granted counsel's motion to withdraw, I extended the deadline for plaintiff's opening brief to May 22, 2026. (R. 20.) Plaintiff filed her main brief on May 20, 2026 (R. 9), the Commissioner filed his response brief on August 27, 2026 (R. 32), and plaintiff filed her reply brief on September 11, 2026 (R. 33). Plaintiff has also submitted additional materials (R. 7, 8, 9, 21), which I discuss below.

## III. STANDARD OF REVIEW

The court will reverse an ALJ's decision only if it is the result of an error of law or it is not supported by "substantial evidence," which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Yokosh v. Bisignano, 170 F.4th 631, 637 (7th Cir. 2026). Although the court does not re-weigh the evidence or substitute its own judgment for that of the ALJ, the court will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions. Liapis v. Bisignano, 180 F.4th 946, 950 (7th Cir. 2026). But this duty of articulation is minimal. "An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." Warnell v. O'Malley, 97 F.4th 1050, 1053 (7th Cir. 2024). All that is required is that the ALJ sufficiently articulate his assessment of the evidence to assure the court that he considered the important evidence and to enable the court to trace the path of his reasoning. Id. at 1054; Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996).

## IV. DISCUSSION

As detailed above, the ALJ thoroughly reviewed the materials before him, supporting his conclusions with substantial evidence, including observations from A.L.R.'s teachers, testing/grade reports, and the opinions of the agency examining and reviewing consultants. The ALJ's findings on the domains largely tracked the report from Dr. Donahoo, a highly qualified expert who considered A.L.R.'s two severe impairments and reviewed most of the evidence.[1] See Anders v. Saul, 860 Fed. Appx. 428, 433 (7th Cir. 2021) (affirming where the ALJ credited the reports of agency consultants, "highly qualified and experts in Social Security disability evaluation"). The ALJ made no error of law, following the three-step childhood disability evaluation process (Tr. at 111), considering the alleged symptoms under the two-step process adopted by the agency (Tr. at 114), and evaluating the medical opinions in accordance with the regulations (Tr. at 117).

Plaintiff proceeds pro se, which requires me to construe her submissions liberally. Greenwell v. Saul, 811 Fed. Appx. 368, 370 (7th Cir. 2020). However, even pro se litigants must present arguments supported by legal authority and citations to the record. Cadenhead v. Astrue, 410 Fed. Appx. 982, 984 (7th Cir. 2011) (citing Correa v. White, 518 F.3d 516, 517 (7th Cir. 2008); Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001)). A generalized assertion of error is not sufficient to challenge an adverse ruling, and undeveloped or unsupported contentions are waived. Id. I have reviewed all of plaintiff's submissions for viable challenges to the adverse decision and am unable to find any.

[1]The ALJ disagreed with Dr. Donahoo regarding the domain of interacting and relating to others, but even if he had adopted Dr. Donahoo's less than marked limitation in that area the result would have been the same.

## A. Additional Materials

On November 6, 2025, before the Commissioner filed the certified administrative record, plaintiff submitted nearly 300 pages of documents (R. 8), most of which are contained in the record.[2] However, within these documents are medical records from April 14, 2025, August 27, 2025, and October 17, 2025, noting treatment for ADHD (R. 8-1 at 81-85, 86-91, 108-12), and February 26, 2025, noting counseling on weight loss (R. 8-1 at 114-15), as well as school records from June 2025 and October 2025 (R. 8-1 at 94, 102-04), which are not in the administrative record. In a cover letter, plaintiff notes that A.L.R. is taking medication for his ADHD (R. 8 at 1), which is reflected in the additional treatment records (R. 8-1 at 90, 112).[3]

The ALJ issued his decision on February 7, 2025, and the "correctness of that decision depends on the evidence that was before him. . . . He cannot be faulted for having failed to weigh evidence never presented to him[.]" Eads v. Sec'y of Health & Human Servs., 983 F.2d 815, 817 (7th Cir. 1993). Plaintiff develops no argument that the new records are "material" for purposes of remand under 42 U.S.C. § 405(g), sentence six. See Schmidt v. Barnhart, 395 F.3d 737, 742 (7th Cir. 2005) ("[T]his court has held that medical records postdating the hearing and that speak only to the applicant's current condition, not to his condition at the time his application was under consideration by the Social Security Administration do not meet the standard for new and material evidence.") (cleaned up). If these records reflect worsening impairments, plaintiff may submit a new application. See McFadden v. Astrue, 465 Fed. Appx.

---

[2]On November 6, 2025, and November 17, 2025, plaintiff submitted copies of the ALJ's decision (R. 7, 9), which is also in the certified record.

[3]As indicated below, in the reply brief, plaintiff indicates the medication was later discontinued.

557, 560 (7th Cir. 2012) (stating that evidence which shows the claimant's condition worsened is not material because it does not describe her condition in the period before the ALJ rendered the decision, and that if any of the claimant's conditions worsened since the ALJ issued the decision then the claimant may reapply for benefits); Getch v. Astrue, 539 F.3d 473, 484 (7th Cir. 2008) ("If Mr. Getch has developed additional impairments, or his impairments have worsened, since his first application for benefits, he may submit a new application.").

On March 27, 2026, plaintiff filed a highlighted copy of the Appeals Council's denial notice, in which the Council noted that she had submitted new evidence, including a February 21, 2025 IEP, which post-dated the ALJ's decision and did not relate to the period at issue. The Council told plaintiff that if she wanted the agency to consider disability after February 7, 2025, she needed to file a new application. (R. 21 at 1; Tr. at 2.) In a letter attached to this filing, plaintiff states that the IEP does relate to the period at issue because she has been pursuing this claim since 2022. (R. 21 at 5-6.)

The mere fact that plaintiff is still in the appeals process does not necessarily mean that any new evidence she submits is material. Cf. Schmidt, 395 F.3d at 742 (rejecting the claimant's argument that new records are relevant because they document treatment for the same ailments alleged to constitute his disability in the proceedings below). Plaintiff develops no argument that the Council committed legal error in finding the additional evidence was not new and material. See Stepp v. Colvin, 795 F.3d 711, 722 (7th Cir. 2015) (discussing the circumstances under which a court may review the Council's denial).

**B. Main Brief**

In the main brief, plaintiff first notes that the ALJ found A.L.R. had the severe impairments of learning disorder and ADHD. (R. 23 at 1.) She contends that ADHD has altered

her son's ability to control and focus on himself and his education; this disability started years ago and is expected to continue. (R. 23 at 2.) However, plaintiff cites no record evidence regarding her son's ADHD that the ALJ overlooked or which compels the inclusion of additional limitations. See Morales v. O'Malley, 103 F.4th 469, 470 (7th Cir. 2024) ("It is not enough to criticize the ALJ's decision about her functional capacity to work. She must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record."); Richards v. Berryhill, 743 Fed. Appx. 26, 30 (7th Cir. 2018) ("[P]ointing to various diagnoses and complaints and saying that they might hinder [the claimant] is insufficient to establish the existence of a functional limitation.").

Plaintiff next complains that the ALJ did not mention her son's severe impairments at the bottom of page 4 or the top of page 5 of his decision. (R. 23 at 2.) The ALJ was on these pages summarizing his findings on the domains. (Tr. a 113-14.) In explaining the basis for these findings, the ALJ later discussed A.L.R.'s learning disorder and ADHD at length. (Tr. at 114-21.) As part of that discussion, he considered plaintiff's statements regarding the limiting effects of these impairments, the observations of school personnel regarding A.L.R.'s limitations, and the medical opinions assessing the degree of functional limitation due to these impairments. The court examines the ALJ's "opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions." Orlando v. Heckler, 776 F.2d 209, 213 (7th Cir. 1985). Plaintiff's claim that the ALJ did not mention her son's severe impairments (R. 23 at 3) lacks merit.

Plaintiff concludes that because the ALJ and Appeals Council did not take her son's severe impairments into consideration his benefits should be awarded back to June 2022. (R. 23 at 3.) But the ALJ did consider these impairments, finding that they produced a marked

limitation in one domain and less than marked limitation in another. (Tr. at 113.) Plaintiff cites no evidence compelling even greater limitations, and "mere disagreement with the manner in which the ALJ weighed the evidence will not support remand." Glenn v. Colvin, No. 16-C-573, 2016 U.S. Dist. LEXIS 164410, at *43 (E.D. Wis. Nov. 29, 2016) (citing Shideler v. Astrue, 688 F.3d 306, 310 (7th Cir. 2012)).[4]

**C. Reply Brief**

In her reply brief, plaintiff notes that ADHD is recognized as a disability under federal laws such as the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Individuals with Disabilities Education Act (IDEA). (R. 33 at 1.) The issue in this case is whether A.L.R. has disabling impairments under the Social Security Act, not whether any of his impairments might qualify as a "disability" under the different requirements of other federal laws. See Rodriguez v. Berryhill, No. 16-CV-1494, 2018 U.S. Dist. LEXIS 58057, at *19-20 (D. Conn. Apr. 5, 2018) ("A person must be disabled within the meaning of the Social Security Act and not any other law or regulation.") (citing 20 C.F.R. §§ 404.1504, 416.904).

Plaintiff next argues that the ALJ erred in finding that her son had no limitation in health and physical well-being, noting that ADHD is a neuro-developmental condition that affects how the brain develops and functions. (R. 33 at 1-2.) She notes that ADHD can cause inattention, hyperactivity, and impulsivity. (R. 33 at 2.)

The ALJ considered A.L.R.'s ADHD under Listing 112.11 (neuro-developmental disorders), finding that the evidence did not satisfy the severity criteria in § B. (Tr. at 112-13.) Plaintiff develops no argument that the evidence compels a different result. The ALJ also

[4]Plaintiff attaches a copy of Dr. Pushkash's report to the brief (R. 23-1), but she does not argue the ALJ erred in his analysis of that report.

considered A.L.R.'s related symptoms, finding the allegations concerning the intensity, persistence and limiting effects of these symptoms not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 115.) Plaintiff develops no argument that this finding was "patently wrong." See Hess v. O'Malley, 92 F.4th 671, 679 (7th Cir. 2024) ("We will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is patently wrong, which means that the decision lacks any explanation or support.") (internal quote marks omitted). Finally, no doctor opined that A.L.R. had limitations in health and physical well-being. See Best v. Berryhill, 730 Fed. Appx. 380, 382 (7th Cir. 2018) ("There is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'") (quoting Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004)).

Plaintiff states that she noticed issues with her son's reading at the age of nine. (R. 33 at 2-3.) She further notes Dr. Pushkash's evaluation, which revealed diagnoses of ADHD and learning disability, and below grade level test scores. (R. 33 at 3.)

The ALJ considered A.L.R.'s reading difficulties, including his test scores, in finding a marked limitation in acquiring and using information. (Tr. at 119.) The ALJ also considered Dr. Pushkash's opinion, finding it somewhat persuasive. (Tr. at (Tr. at 117.) Plaintiff develops no argument that the ALJ erred in making these findings. See Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008) (holding that if the ALJ discounts a physician's opinion after considering the relevant factors, the court must allow that decision to stand so long as the ALJ minimally articulated his reasons).

Plaintiff notes that she provided multiple IEPs showing how severe her son's ADHD really is. (R. 33 at 3-4.) The ALJ considered all of the IEPs in the record, factoring them into his various findings on the domains. A reviewing court may not substitute its judgment for the

ALJ's by re-weighing evidence. Yokosh, 170 F.4th at 640.

Plaintiff states that the ALJ denied the claim even though he found severe impairments. (R. 33 at 4; Tr. at 111.) Step two serves as a filter to screen out de minimis disability claims; "a finding of any severe impairment suffices to satisfy its requirements." Hairston v. Comm'r of Soc. Sec., 52 F. Supp. 3d 657, 672 (S.D.N.Y. 2014); see also Thomas v. Colvin, 826 F.3d 953, 960 (7th Cir. 2016) (noting that step two has been described as a de minimis screening for groundless claims). To be entitled to benefits, the child-claimant must go further and present evidence of Listing level impairment/functional equivalence at step three.

Plaintiff argues the ALJ erred in finding a less than marked limitation in attending and completing tasks. She contends it should have been marked given the evidence (IEPs, report cards, and tests scores) that A.L.R. always had problems starting and completing tasks. (R. 33 at 4-5.) She states that her son has always needed reminders and would sometimes get frustrated and just give up on what he needed to do. (R. 33 at 5.)

The ALJ considered all of the evidence—school records, teacher reports, hearing testimony, consultative examination findings, and lack of treatment—in finding a less than marked limitation in this domain. (Tr. at 120.) The ALJ particularly stressed the teacher's report noting no or slight problems in most activities related to attending and completing tasks, and the most recent IEP noting A.L.R. was on-task in all academic classes about 90% of the time. (Tr. at 120.) This finding was also consistent with the report from Dr. Donahoo, which the ALJ found generally persuasive. (Tr. at 118-19.) Plaintiff cites no evidence compelling a marked limitation in this domain.

Plaintiff notes that her son has a medical diagnosis of ADHD, which has been chronic and consistent with his behaviors since 2022. (R. 33 at 5-6.) She states that the impairment

has been noticed by family and multiple teachers over the years. (R. 33 at 6.)

The ALJ accepted that A.L.R.'s ADHD was a severe impairment but, on consideration of all the evidence, denied the claim at step three. Again, plaintiff cites no evidence compelling a different result.

Plaintiff states that her son is now a tenth grader in high school, still with an IEP, still performing below grade level. (R. 33 at 6-7.) She further states that in August 2025 A.L.R. tried medication to improve his focus (R. 33 at 7); the medication was later discontinued, and he declined therapy (R. 33 at 8). Plaintiff indicates that she tries to remind her son to stay on task, but he almost always strays. (R. 33 at 8.) She states that her son's teachers have agreed in multiple meetings that he has limited alertness. (R. 33 at 8-9.) She concludes that his ADHD has always affected his academic performance, requiring specially designed instruction, but he always performs below expectations and makes minimal progress, as demonstrated in the school records provided to the ALJ. (R. 33 at 9-11.) She asks the court to look at all the evidence and grant the application. (R. 33 at 11.)

To the extent plaintiff relies on subsequent developments, e.g., A.L.R.'s recent medication trial, as indicated above, the correctness of an ALJ's decision depends on the evidence that was before him. See Eads, 983 F.2d at 817. The ALJ thoroughly considered the school records presented to him, as well as the various medical opinions of record. Plaintiff "primarily disputes the ALJ's ultimate finding, but a mere disagreement with the ALJ does not warrant remand. Rather, this case is an example of where the ALJ considered the evidence, built a logical bridge between the evidence and his conclusion, and sufficiently explained his rationale." Kinnari A. v. Saul, No. 19 C 760, 2020 U.S. Dist. LEXIS 65005, at *7-8 (N.D. Ill. Apr. 14, 2020). The court reviews the record as a whole, but "it cannot substitute its own judgment

for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." Stephens v. Berryhill, 888 F.3d 323, 327 (7th Cir. 2018).

## V. CONCLUSION

**THEREFORE, IT IS ORDERED** that the ALJ's decision is affirmed, and this case is dismissed. The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 7th day of October, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge